Next case, Mary Frances Menard v. The Workers' Compensation Commission, 5090354. Counsel, please. Thank you, Your Honor. If it pleases the Court, Mr. Randolph. My name is Jerry Bonifield. I'm here representing Mary Frances Menard. Ms. Menard is a Southern Illinois resident who was living near Carbondale, Illinois, and became engaged in a workers' compensation claim, which was a, and its history will show us, a mental claim. And during the pendency of that claim against her employer, she was directed by her employer to go from her home in Carbondale, Illinois to Chicago, Illinois. Is it more accurate to say she was directed by her former employer? It is correct. There's no question she had been discharged by the time this happened, Your Honor. No question. I believe I made that clear in my brief. I hope so. Oh, you did. In any event, she was directed by her former employer, as a result of the pending workers' compensation claim, to go to Chicago, Illinois in the middle of the winter to be examined under a Section 12 exam by a physician of their choice. She resisted that to the point that she asked the former employer, against she who had the claim pending, to let her see some place, some physician closer, perhaps St. Louis or Southern Illinois, anywhere. That request on her behalf was denied. She was directed not only to go to Chicago, but to go there with her medical records. And as a practical matter, she had no choice. She got to proceed in a workers' compensation claim or chance, having that claim possibly denied, but certainly prolonged. She could not afford to do either of those things. So she went to Chicago. Counsel, to be blunt about it, how do you get around the Skelges case? I get around it simply by looking at the Commission's decisions later, Eastern v. North America, the Lee case. The Commission's decisions. I'm sorry. Skelges was an Illinois Supreme Court decision. I understand it was. But Judge, as I said in my brief, the Commission, the decision in Skelges, did not take into account any of the humanitarian rationale for the Industrial Commission. It's a wrong decision. It's, period, a decision that should not be. And in this case, we're dealing with something that's different anyway. She was being directed. She was under the direction and control of, I know it's her former employer, but she had been directed to go there. That's all there is to it. She had no choice. Well, how do we get around, I mean, Skelges, you understand what the law provides. Yes. This, you know, vision of the appellate court is not free to disregard Supreme Court decision on point, are we? I think you are entitled to look at the decision and see if it really meets the reason for the Act. And the difference between Skelges and the facts of this case, then, is what? The difference simply is this, that in Skelges, as you have here, you have someone who was denied the application of the Act simply because the employer, who was by then the former employer, discharged that person. That doesn't give them an absolute right to then continue to give direction in order for that employee or former employee to secure their rights and then say, we have no further obligations to that employee whatsoever. And yet, that's what happened in Skelges. Yes. In Skelges, they directed the employer to undergo an IME at the employer's request. Yes. Which is what happened here. The employer directed the claimant to do so. Pretty much so. The difference being here that the employee asked, essentially begged, to be sent somewhere else. I think it's just the degree, almost, being sent over 400 miles, let's say, from your home in the middle of winter to Chicago, where it's certainly not going to be any surprise that there can be inclement weather, told to bring your own medical records, which will speed things up, I agree with that. And then, when you have an accident, because of the way you're handling your items of personal comfort, because you have to go and stay overnight, and your own medical records, then deny that you have any obligation under the Act. I don't think that that meets the humanitarian nature of the Act at all. I think every case, as the Commission said at Easton, has to be looked at on its own to decide whether or not the employer, or former employer, is responsible. And in this case, I believe they are. So, are you asking us to use some sort of equitable powers? I believe that's right. That's all it can be, Your Honor. And do you have some cases you can point us to? Judge, I've pointed the Court to every case I can point to in this thing. But the simple fact of the matter is, it's, you know, said it a thousand times over the years, and you've heard it 10,000 times. It just ain't right. It's just not fair to the employee to do this to the employee. I don't think it violates the Act by any means. I don't think it flies in the face of any existing law. It doesn't comport 100 percent with scale gas. But as I said, scale gas was simply wrong, in my opinion. How do we get your argument on scale gas? Did you discuss that in your reply brief? I did, Judge. It's in my brief. I believe that. It was not in your opening brief. Then it may not be in there, Judge, to tell you the truth. How can you argue something you don't even put in your brief? I did put in the brief somewhere, Judge, that scale gas is a decision that the Court, the Jackson County Circuit Court, depended on scale gas, which is a decision wrong that was made and which probably should have been overturned many years ago. Now, I question whether I said anything beyond that. Well, I question whether you said that. I certainly don't want to argue with the Court, but I believe I did. Please proceed. Judge, that's basically my case. I believe that the Commission, in this case, their decision should not have been overturned. There's more than adequate evidence that she was under control of the employer by being directed to go there, more than enough evidence that the Jackson County Circuit Court should not have overturned that decision. It's a matter of, is there evidence in my behalf? Yes, there is. Unless you have other questions, I'll let Mr. Grandolph talk. Thank you, Counsel. Counsel, please. Please support, Counsel. I'm Michael Grandolph. I'm here for Gateway. We believe the decision of the Circuit Court should be affirmed. The Circuit Court cited scale gas. It's an old case, 61 years old. Supreme Court. It's never been reversed. It's never been changed. Is there a legitimate legal basis for us to avoid the application of scale gas that you can think of? To avoid it? Yeah. No. It's the Supreme Court rule. It's right on point. Step by step by step by step. I don't know how. I don't know. There's a way to get around it. It's argued that it's bad law. It should not have been, the decision should not have come down in the first place. The bottom line is, that's the law in the state of Illinois. Plain and simple. Supreme Court. You also got other cases that, as you know, if you look at the industrial decisions by the Commission, it ignores the Lee case, which is an appellate court case, and chooses to use an industrial commission case. Once again, it's apples and oranges here. My argument was before this panel here, I was signing this up, a decision from the industrial commission. I got shot down right away on that, saying you have to follow the appellate court laws and their standards. I think that's the same thing here. Besides the fact that the Easton case is not even on point, one way or the other. The bottom line is this. Their argument is it wasn't fair, it wasn't right, that Ms. Menard had to travel 400 miles during the winter. Why she was sent up there, I have no idea. Quite frankly, I wasn't involved in this case when that occurred. I don't know why they picked to send her up there. There's a motion practiced before the Commission to stop that. You can file a motion to object, saying it's not reasonable to send my client that far and have a hearing before the Commission. That was never done. So whether or not some steps should have been taken to avoid the trip, that's besides the point. But the bottom line is, the Supreme Court rule, the Supreme Court case, never overturned. It's right on point. Any questions? Thank you. I have nothing further, Your Honors. I've given you my thoughts on the matter, and that's where I stand. Your reference to Skelgis was under argument 7 of the brief. I thought it was in there somewhere. Thank you, Your Honor. Good job. Clerk, I'll take the matter under advisement for disposition.